**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PEYMAN PAKDEL; SIMA CHEGINI, *Plaintiffs-Appellants*, v. CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO BOARD OF SUPERVISORS; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS, *Defendants-Appellees*. | No. 17-17504 D.C. No. 3:17-cv-03638-RS ORDER |

Filed October 13, 2020

Before: Ronald M. Gould, Carlos T. Bea, and
Michelle T. Friedland, Circuit Judges.

Order;
Dissent by Judge Collins

# SUMMARY*

## Civil Rights

The panel denied on behalf of the court a petition for rehearing en banc in an action brought pursuant to 42 U.S.C. § 1983 against the City and County of San Francisco asserting a Takings Clause challenge to the City's Expedited Conversion Program, which allows property owners to convert their tenancy-in-common properties into condominium properties on the condition that the owners agree to offer any existing tenants lifetime leases in units within the converted property.

Dissenting from the denial of rehearing en banc, Judge Collins, joined by Judges Callahan, M. Smith, Ikuta, R. Nelson, Bade, Bress, Bumatay, and VanDyke, stated that the panel's unprecedented decision sharply departed from settled law and directly contravened the Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), which held that a plaintiff asserting a Takings Clause claim under § 1983 is not required to exhaust state remedies.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Jeffrey W. McCoy (argued), James S. Burling, and Erin E. Wilcox, Pacific Legal Foundation, Sacramento, California; Paul F. Utrecht, Utrecht & Lenvin, LLP, San Francisco, California; Thomas W. Connors, Black McCuksey Souers & Arbaugh, LPA, Canton, Ohio; for Plaintiffs-Appellants.

Kristen A. Jensen (argued) and Christopher T. Tom, Deputy City Attorneys; Dennis J. Herrera, City Attorney; Office of the City Attorney, San Francisco, California; for Defendants-Appellees.

Sarah Harbison, Pelican Institute for Public Policy, New Orleans, Louisiana; for Amicus Curiae Pelican Institute for Public Policy.

Kimberly S. Hermann, Southeastern Legal Foundation, Roswell, Georgia; for Amici Curiae Southeastern Legal Foundation, National Federation of Independent Business Small Business Legal Center, and Beacon Center of Tennessee.

## ORDER

Judge Gould and Judge Friedland have voted to deny the petition for rehearing en banc. Judge Bea has voted to grant the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc. A judge of the court requested a vote on en banc rehearing. The matter failed to receive a majority of votes of non-recused active judges in favor of en banc consideration. Fed. R. App. P. 35(f).

The petition for rehearing en banc is **DENIED**. Judge Collins's dissent from the denial of en banc rehearing is filed concurrently herewith.

---

COLLINS, Circuit Judge, with whom CALLAHAN, M. SMITH, IKUTA, R. NELSON, BADE, BRESS, BUMATAY, and VANDYKE, Circuit Judges, join, dissenting from the denial of rehearing en banc:

Less than one year after the Supreme Court squarely held that a plaintiff asserting a Takings Clause claim under § 1983 is not required to exhaust state remedies, *see Knick v. Township of Scott*, 139 S. Ct. 2162, 2167 (2019), the panel majority in this case effectively imposed such a requirement by holding that a plaintiff who commits a procedural default during the local administrative process forfeits any right to thereafter assert a takings claim. Because the panel's unprecedented decision sharply departs from settled law and directly contravenes the Supreme Court's decision in *Knick*, I respectfully dissent from our denial of rehearing en banc.

**I**

Prior to 2013, the City and County of San Francisco ("City") had a program whereby the multiple property owners who hold interests in multi-unit properties as tenants in common could convert their jointly owned buildings to individually owned condominiums. *Pakdel v. City & Cnty. of San Francisco*, 952 F.3d 1157, 1161 (9th Cir. 2020). Conversion rights were granted based on an annual lottery, and demand for conversion far outstripped the program's limited allotment. *Id.* In 2013, in an attempt to clear the backlog of conversion applications, the City replaced the conversion lottery with the Expedited Conversion Program

PAKDEL V. CITY & CNTY. OF SAN FRANCISCO 5

("ECP"). *Id.* The ECP allows all owners to convert their properties to condominiums, subject to an application fee and certain conditions, among which was the requirement that, if an owner was renting his or her unit to a tenant, the owner had to offer that tenant a lifetime lease—*i.e.*, the "Lifetime Lease Requirement." *Id.* An owner who offered a lifetime lease to a tenant received a partial refund of the ECP application fee. *Id.* The City's program notably contained a program-wide poison pill: any legal challenge to the Lifetime Lease Requirement would trigger a suspension of the *entire* ECP for all owners of tenant-occupied units for the duration of the litigation. *Id.* at 1162.

Peyman Pakdel and Sima Chegini ("Plaintiffs") purchased an interest in a tenancy-in-common property in San Francisco in 2009. 952 F.3d at 1161. The couple had hoped to move into their unit of the building when they retired. *Id.* In the meantime, they rented their unit to a tenant. *Id.* Plaintiffs' "Tenancy in Common Agreement" obligated them to cooperate with the other owners by taking all steps necessary to convert their building to condominiums. At the time Plaintiffs purchased their interest and executed the Tenancy in Common Agreement, the City was still operating the conversion lottery, under which there was no Lifetime Lease Requirement.

In 2015, pursuant to their contractual obligations, Plaintiffs—along with the other joint owners of their building—submitted an ECP application to the San Francisco Department of Public Works ("the Department"). 952 F.3d at 1161. In January 2016, after a public hearing, the Department approved their "tentative conversion map." *Id.* Subsequently, Plaintiffs signed an agreement with the City to offer a lifetime lease to their tenant and then did offer their tenant such a lease. *Id.* at 1161–62. Because they had

done so, the couple received a partial refund of their application fee. *Id.* at 1162. In December 2016, the Department approved their "final conversion map." *Id.*

Instead of executing the lease, however, Plaintiffs twice requested, on June 9 and 13, 2017, that the City grant them an exemption from the Lifetime Lease Requirement or else compensate them for offering the lease. 952 F.3d at 1162. As the panel majority notes, "the City refused both requests." *Id.* Plaintiffs then sued in federal court under Revised Statutes § 1979, 42 U.S.C. § 1983, claiming, *inter alia*, that the City had taken their property without just compensation, in violation of the Fifth Amendment's Takings Clause. The district court granted the City's motion to dismiss, finding that Plaintiffs' suit was not ripe because they had not sought compensation for the alleged taking in state court, as required under the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). *See Pakdel v. City & Cnty. of San Francisco*, 2017 WL 6403074, at *4 (N.D. Cal. Nov. 20, 2017).

While the district court's order was on appeal before this court, the Supreme Court issued its decision in *Knick*, which overruled the portion of *Williamson County* on which the district court had relied. Specifically, the Court eliminated the requirement that § 1983 takings plaintiffs must first seek compensation in state court. 139 S. Ct. at 2169–70. As the Court explained, this aspect of "*Williamson County* effectively established an exhaustion requirement for § 1983 takings claims," contrary to the "'general rule'" governing all other "constitutional claims under § 1983." *Id*. at 2172–73.

Rather than remand the case, however, the panel majority affirmed the district court's decision on the

alternative ground that Plaintiffs failed to meet *Williamson County*'s separate "ripeness" requirement that Plaintiffs secure a "final decision" from the relevant decisionmaker. *Pakdel*, 952 F.3d at 1163. The majority reached this conclusion even though there are concededly no further avenues of administrative relief open to Plaintiffs to avoid the City's definitive imposition of the Lifetime Lease Requirement on Plaintiffs' unit. In the majority's view, the City's now-unalterable decision to extract a lifetime lease from Plaintiffs should nonetheless be *deemed* to be non-final for takings purposes because Plaintiffs "bypassed" *previously* available administrative procedures that might have avoided the lease. *Id.* at 1167.

Judge Bea dissented, concluding that "the City here has indeed reached . . . a final decision," and that *Williamson County* required nothing more. 952 F.3d at 1170. Judge Bea noted that, by making the finality of the City's decision turn on whether Plaintiffs had committed a procedural default during the administrative process, "rather than simply evaluating whether a decision about the application of a regulation is final," the majority's approach had departed from *Williamson County* and had effectively "'establish[ed] an exhaustion requirement for § 1983 takings claims,' something the law does not allow." *Id*.

## II

The Supreme Court has long held that suits under § 1983 are not subject to exhaustion. *See Knick*, 139 S. Ct. at 2167 ("[T]he settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983." (simplified)); *see also Patsy v. Board of Regents*, 457 U.S. 496, 504 (1982) (§ 1983 provides "immediate access to the federal courts"). In *Knick*, the Supreme Court affirmed that takings claims are no exception and that exhaustion of state

remedies is not required for such claims—indeed, that point was one of the bases on which the Supreme Court rested its partial overruling of *Williamson County*. The Court held that, in requiring property owners to first pursue just compensation in state court, *Williamson County* had "effectively established an exhaustion requirement for § 1983 takings claims" and that, had *Williamson County* expressed its holding "in those terms[,] . . . its error would have been clear." 139 S. Ct. at 2173. Thus, under *Knick*, exhaustion of state remedies is not required for § 1983 takings claims.

*Knick* left undisturbed *Williamson County*'s second holding, which is that, before bringing a takings claim, a property owner must obtain a "final decision regarding the application of the regulations to the property at issue." *See Williamson Cnty.*, 473 U.S. at 186. This ripeness requirement is driven by the "very nature" of the Takings Clause inquiry, which depends on fact-intensive considerations that "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Id.* at 190–91. Thus, in order to ensure that a local land-use authority, such as a zoning board, has arrived at a definitive position regarding a specific dispute, a property owner must invoke available administrative procedures, including seeking exemptions from otherwise applicable requirements. *Id.* at 188. In the absence of such a definitive application of the regulations to the property at issue, the federal court would be "unable to discern how a grant of a variance . . . would have affected the profitability of the development," thereby rendering the takings inquiry "impossible." *Id.* at 191; *see also Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 504

(9th Cir. 1990) ("It is precisely this type of speculation that the ripeness doctrine is intended to avoid.").

The Court in *Williamson County*, however, carefully distinguished this finality requirement from an exhaustion requirement, noting that the "question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable." 473 U.S. at 192. The purpose of a finality requirement, the Court explained, is simply to ensure that "the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury," whereas an exhaustion requirement focuses on whether the claimant has complied with "administrative and judicial procedures" for seeking relief. *Id*. at 193.

Under the facts of this case, the application of *Williamson County*'s finality requirement is straightforward. The City has definitively imposed the Lifetime Lease Requirement on Plaintiffs' property, and there is no further avenue open to them under local law to avoid that. Indeed, Plaintiffs twice requested an exemption from the requirement, and the City rejected both requests. Neither the City nor the panel majority contend that any route of administrative appeal remains available to Plaintiffs. There is therefore no danger that a federal court would have to speculate as to how the City would apply the Lifetime Lease Requirement here. The City's decision is final, the Lifetime Lease Requirement applies, and Plaintiffs' suit is ripe. The

panel therefore should have remanded the case to the district court for consideration of the merits of Plaintiffs' claim.[1]

### III

The panel majority nonetheless holds that, because Plaintiffs *previously* "could have sought an exemption" from the City and failed to do so, the City's now-unalterable imposition of the Lifetime Lease Requirement is deemed to be forever "unripe" for review. 952 F.3d at 1163, 1165. The majority reaches this conclusion even though it concedes that, as matters now stand, there are no longer any administrative procedures available to Plaintiffs to forestall the challenged action of the City. *Id*. at 1167–68. The panel majority's decision thus saddles Plaintiffs with a plainly final decision that will nonetheless be *deemed* (forever) to be "non-final" for takings purposes simply because, earlier during the administrative process, Plaintiffs failed to pursue possible administrative measures that the City now denies to them. This is not the finality requirement described in *Williamson County* and it bears no relation to any conventional notion of "ripeness" doctrine. On the contrary, it is an exhaustion requirement pure and simple, backed up (as exhaustion requirements are) by procedural-default rules. The panel has thus defied Supreme Court authority by converting *Williamson County*'s finality requirement into precisely the sort of exhaustion requirement disavowed in that case and explicitly rejected as a "clear" error in *Knick*.

We know that the panel majority's rule is an "exhaustion" requirement, because the Supreme Court has told us that it is: under familiar principles of administrative

---

[1] I express no view as to whether Plaintiffs' takings claim has any merit.

law governing exhaustion, a plaintiff "must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a *precondition* to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (emphasis added); *see also id.* at 90.[2]  As the *Woodford* Court noted, the concept of "proper exhaustion" in the administrative-law context is analogous to the exhaustion requirement in habeas law, where "the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default." *Id.* at 92.  Under that procedural-default doctrine, a prisoner must "comply with the deadline for seeking state-court review" of federal claims or else be "barred from asserting those claims in a federal habeas proceeding." *Id.* at 92–93.  *Woodford*'s description of this concept of exhaustion exactly fits the rule that the panel majority applied here—because Plaintiffs did not invoke previously available administrative procedures in a timely manner, their claims are now barred and will never be considered on their merits.  The panel majority's holding that Plaintiffs' failure to pursue an earlier administrative process bars their takings claim *is* an exhaustion requirement, and it is flatly precluded by *Knick* (which expressly bars requiring exhaustion for takings claims) and by *Williamson County* (which affirmed

---

[2] The decision in *Woodford* involved the Prison Litigation Reform Act ("PLRA"), in which Congress created an explicit statutory exception to the general rule that § 1983 claims need not be exhausted. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."). Because the *Woodford* Court held that the PLRA "uses the term 'exhausted' to mean what the term means in administrative law," 548 U.S. at 93, its general description of ordinary exhaustion principles extends beyond the PLRA context and thereby identifies the type of exhaustion rules that generally do *not* apply to § 1983 claims, including (after *Knick*) takings claims.

that its ripeness requirement was not an exhaustion requirement).

The panel majority's illicit imposition of an exhaustion requirement is further confirmed by the fact that the panel majority expressly borrows its rule from caselaw interpreting the very state-litigation requirement from *Williamson County* that *Knick* expressly overruled as constituting an improper exhaustion requirement. The majority notes that courts interpreting the now-overruled requirement to exhaust state litigation remedies had rejected claims by plaintiffs who "missed deadlines or failed to comply with other requirements" when pursuing compensation in state proceedings. *See Pakdel*, 952 F.3d at 1166–67 (collecting cases). Such an outcome is exactly what one would expect from an exhaustion or procedural-default regime, and *Knick* overruled the state-litigation requirement for the very reason that it *was* an exhaustion regime. The fact that the majority's holding relies on the now-overruled state-litigation cases confirms that it is clearly wrong: the state-litigation requirement and the majority's interpretation of the finality requirement both create exhaustion requirements where none should exist.

## IV

The panel majority's attempt to ground its new exhaustion requirement in existing case authority fails.

The panel majority remarkably suggests that *Williamson County* itself actually endorsed the view that missed deadlines produce the sort of oxymoronic perpetual unripeness that the majority adopted here. 952 F.3d at 1166. The panel majority's cryptic discussion of *Williamson County* is somewhat hard to follow, but the majority appears to suggest that the Court considered and rejected the view

that the applicant there could satisfy the finality requirement by defaulting on available remedies until the point that any further hope of obtaining variances "would have been too late under the commission's regulations." *Id*. *Williamson County* says nothing of the sort. There was no hint in that case that remedies would expire or become forever unavailable through procedural default. Rather, the claimant in *Williamson County* argued that it should not have to invoke *available* variance procedures before challenging, as a taking, the local government's disapproval of its proposed development plat. 473 U.S. at 192. The Court rejected this argument, because resorting to the available "procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed." *Id*. at 193. Given that, under the Commission's regulations, "any condition shown on the plat which would require a variance *will* constitute grounds for disapproval of the plat," *id*. at 190 (emphasis added), it followed that the Commission's disapproval of the plat merely "prevent[ed] respondent from developing its subdivision *without obtaining the necessary variances*, but leaves open the possibility that respondent may develop the subdivision according to its plat *after obtaining the variances*," *id*. at 193–94 (emphasis added). *Williamson County* was thus relying on the continued availability of variances; it said nothing at all about procedural default.

The majority is likewise wrong in suggesting that our decision in *Southern Pacific Transportation Co*. endorsed its view. *See* 952 F.3d at 1165. In that case, the appellants opposed the rezoning of land that they owned, but they had never proposed an alternative plan for use of the land or requested variances from the new zoning requirements. 922 F.2d at 504. We held that their takings claim was not

ripe because, without an actual plan, "federal courts would be required to guess what possible proposals appellants might have filed with the City, and how the City might have responded to these imaginary applications." *Id.* The clear premise of our holding was that the opportunity to submit a plan was still *available*.

Beyond these inapposite citations, the panel majority points to no case in which we have ever applied ripeness or finality doctrine in the peculiar way the panel majority did here. On the contrary, we have repeatedly held that when a takings plaintiff has "no further procedures available to [it] to challenge that decision," the finality requirement of *Williamson County* is satisfied. *See Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 657 (9th Cir. 2003); *see also Hall v. City of Santa Barbara*, 833 F.2d 1270, 1281 n.28 (9th Cir. 1986) (to the extent that *Williamson County*'s finality requirement applied, it was satisfied, because the plaintiffs "have no further administrative recourse available"), *overruled on other grounds by Yee v. City of Escondido*, 503 U.S. 519 (1992).

\*   \*   \*

By applying procedural-default rules to bar a takings claim concerning an unquestionably final decision, the panel majority's decision imposes an impermissible exhaustion requirement, not a finality requirement. The result is to put takings claims back into a second-class status, less than one year after the Supreme Court had squarely put them on the same footing as other constitutional claims. I respectfully dissent from our failure to rehear this case en banc.